RECORD NO. 13-4807

IN THE

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA

                                       Plaintiff – Appellee,

v.

KELVIN QUADE MANRICH

                                       Defendant -- Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF MARYLAND, NORTHERN DIVISION
_____

REPLY BRIEF FOR APPELLANT
_____

Bruce A. Johnson, Jr.
Law Office of Bruce A. Johnson, Jr., LLC
4301 Northview Drive
Bowie, Maryland 20716
(301) 860-1505
*Attorney for the Appellant*

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA

                **Plaintiff – Appellee,**

v.

KELVIN QUADE MANRICH

                **Defendant -- Appellant.**

The Defendant-Appellant, Kelvin Quade Manrich (hereinafter "Mr. Manrich"), by and through his undersigned counsel, hereby submits his Reply Brief:

**ARGUMENT**

I. **THE COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED THE PREMISE THAT THE GUIDELINES WERE 41 TO 51 MONTHS AND SENTENCED MR. MANRICH DIFFERENTLY THAN HIS CO-DEFENDANTS.**

  A. *The issue of foreseeability was not barred by this Court's Mandate*

The Government argues that the District Court correctly interpreted the mandate from this Honorable Court at re-sentencing, when it indicated it was restricted at the re-sentencing hearing to only considering the fraudulent claim amount. *Brief for Appellee at 16-18.* It is true that a district court on remand "may not reconsider issues the mandate laid to rest." *United States v. Susi,* 674 F.3d at 283(2012). However, when "an appellate court sets aside a defendant's 'entire

sentence and remand[s] for a de novo resentencing' pursuant to a general mandate, the district court on resentencing is not bound by its prior consideration of the case." *Id.* at 284(quoting *Pepper v. United States,* ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 1229, 1250–51, 179 L.Ed.2d 196 (2011)). This Honorable Court clearly stated the " kickback amounts that his co-conspirators admitted receiving were properly included in the court's relevant conduct analysis." *JA 312*. But this Court did not directly speak to the foreseeable fraudulent loss amount of Mr. Manrich's co-conspirators. Therefore, the District Court was able and should have considered this when the case was remanded for sentencing.

   In accordance with this Court's mandate the loss amount totaling $42,550 was correctly calculated in the total loss incurred. However, no evidence was offered at re-sentencing to show that Mr. Manrich was aware of the number of vehicles that were involved or what payments were made by insurance companies to increase the total loss amount to $70,000. The Government argues that the District Court allowed Mr. Manrich to present evidence on the foreseeability issues; however it is clear, the Court precluded Defense Counsel from making any argument or obtaining any evidence in this regard. *JA 348-50.*

   It is clear that the prosecution failed to establish any knowledge on the part of Mr. Manrich of the loss amount or that loss amount of $70,000 or more was reasonably foreseeable. At best, the prosecution only presented evidence to

establish a fraud loss amount of $20,741.54; therefore, the Court abused its discretion when it accepted the higher guideline amount of 41-51 months.

> **B. *The evidence adduced at re-sentencing does not support a loss amount of $70,000.00 or more.***

    *1.    Allen Vehicle*

The Government argues that the evidence presented at sentencing was sufficient to support the conclusion that the entire claimed loss amount for Lartisha Allen's claim was fraudulent. *Appellee's Brief 24*. They base this contention on the fact that Mr. Moreno testified that he previously told Agent Guynn in an earlier interview that he was confident the entire claim for the car was false. However, Mr. Moreno did not explain *why* the claim was 100% false. Furthermore, at the resentencing, he testified to recognizing the vehicle from pictures but did "not recall the whole thing." *JA 330*.

Second, the Government claims that Agent Guynn testified that in a recorded telephone conversation intercepted during the investigation, co-conspirator Diggs had directed the Allen accident victim to file a false police report in connection with the incident. *Appellee's Brief 24*. However, even if Ms. Allen was directed to file a false police report, it does not prove that the entire claim was false.

The testimony by Mr. Moreno and Agent Guynn concerning these claims does not support the arbitrary amount espoused by the prosecution, which the

Court of Appeals previously ruled to be deficient. Therefore, the fraud amount for Ms. Allen's claim, totaling $3,021.04 should be deducted from the fraud loss amount claimed by the prosecution.

### 2. *Hall and Smother's vehicle*

The government argues that Mr. Manrich waived his right to challenge the loss numbers for the vehicles of Hall and Smothers because he accepted the accuracy for the loss amount for purposes of restitution. *Appellee's Brief* 25. However, Mr. Manrich's counsel at the original sentencing held on August 3, 2012 clearly states that Mr. Manrich admitted to receiving money for referring the vehicle but had no knowledge as to the damage Majestic did to the car resulting in the fraudulent loss amount. *JA 276-80.* Mr. Manrich took responsibility for this actions and accepted the restitution amount but that does not ipso facto support the premise that Mr. Manrich agreed to the fraudulent loss amount now be argued by the Government.

Next, the government argues that it presented sufficient evidence to show the actual loss amount for the Hall and Smothers vehicles. *Appellee's Brief 25.* This is not the case. Agent Guynn first testified to the claim filed by Alexis Hall determining the fraud amount to be $2,548.24 based off of Ms. Hall's trial testimony and consulting with the insurance company. *JA 257.* However, no evidence was presented to explain why the fraud amount was considered to be 79%

of the actual claim. Next, Agent Guynn testified to the claim filed by Priscilla Smothers determining the fraud amount to be $3,166.13 based on her trial testimony and consulting with the insurance company. Again, no testimony was offered to determine why the fraud amount for that claim was 73%. The testimony by Agent Guynn for these claims proves no more than arbitrary amount previously determined by the prosecution, which the Court of Appeals ruled to be insufficient. Therefore, because there was no evidence to show the actual or reasonably estimated fraud amount for Ms. Hall's and Ms. Smother's claims, the amount totaling $5714.37 should be deducted from the total fraud loss amount.

    3.    *Rodriquez Vehicle*

The Government argues that Mr. Manrich waived his right to raise this argument on this appeal because he did not raise it in his first appeal. *Appellee's Brief 27*. As already discussed, the District Court was able and should have considered the foreseeability of all facets of the alleged raudulent loss amount when the case was remanded for sentencing. The fraudulent loss amount for Officer Rodriguez's vehicle was not part of the conspiracy and could not have been foreseeable to Mr. Manrich.

    The purpose of the conspiracy as stated in Kelvin Manrich's indictment is as follows:

> *"It was a purpose of the conspiracy for Morena and Mejia to enrich over 50 BPD Officers, including the defendants, and to benefit Moreno and Mejia by issuing payments to the BPD Officers in exchange for the BPD Officers' exercise of their official positions and influence to cause the vehicles to be towed or otherwise delivered to Majestic for automobile services and repairs."*

*JA 11.*

Although Officer Rodriguez was an Officer with the Baltimore Police Department and involved in the above mentioned conspiracy, he acted on his own to sell his personal vehicle to Majestic and report it stolen as an ordinary citizen. *JA 191.* Additionally, Officer Rodriguez's claim was filed prior to Mr. Manrich becoming involved in the conspiracy. *JA 630.* Although the Government claims that the settlement and authorization to pay on the claim was not until February 19, 2012, the actual claim was submitted several weeks prior to that. The act of the co-defendant happened when the false claim was filed, not when the money was dispersed. Therefore his claim, totaling $15,215.00, should not be included in the total loss amounted attributed to Mr. Manrich.

Even only taking into account the arguments here, the total loss amount would only be Sixty Four Two Hundred Eighty Six Dollars ($64,286). Therefore, the guidelines for Mr. Manrich should be calculated at 15-21 months. Accordingly, the Honorable Blake improperly sentenced Kelvin Manrich and the Court should vacate the sentence and sentence him to Fifteen (15) months which would be consistent with the sentences of the Co-Defendants.

## CONCLUSION

Based on the foregoing, Appellant, Kelvin Quade Manrich, respectfully requests this Honorable Court find that the guidelines for Mr. Manrich's offences should be calculated at 15-21 months and remand the case to the District Court for re-sentencing.

                              Respectfully Submitted,

                              KELVIN QUADE MANRICH

_____/s/_____

By:   Bruce A. Johnson, Jr., Esquire
        4301 Northview Drive
        Bowie, Maryland 20716
        Telephone: 301-860-1505
        Facsimile: 301-860-1508
        bajjlaw@aol.com

## REQUEST FOR ORAL ARGUMENT

Counsel for the Appellant request an opportunity for oral argument of the appeal before a panel of this Court.

Respectfully Submitted,

\_\_\_\_/s/_____
Bruce A. Johnson, Jr.

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [1,384] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type of style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*], or

   [   ] this brief uses a monospaced typeface using [*state the name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>January 27, 2014</u>

                                                                    ____/s/_____
                                                                    *Bruce A. Johnson, Jr.*
                                                                    *Counsel for Appellant*

## **CERTIFICATE OF FILING AND SERVICE**

      I hereby certify that on this 27th day of January, 2014, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Tonya N. Kelly, Esquire
Kathleen O'Connell, Esquire
Office of the U.S. Attorney
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4973
*Counsel for Appellee*

      I further certify that on this 27th day of January, 2014, I caused the required copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

      _____/s/_____
      *Bruce A. Johnson, Jr.*
      *Counsel for Appellant*